TELEPROMPTER CABLE COMMUNICATIONS CORPORA-
TION (VENTNOR DIVISION — WILDWOOD DIVISION
— OCEAN CITY DIVISION) *ET AL.*, APPELLANTS, v.
BOARD OF PUBLIC UTILITY COMMISSIONERS, DE-
PARTMENT OF PUBLIC UTILITIES, STATE OF NEW
JERSEY, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 26, 1977—Decided October 20, 1977.

(1)

Before Judges CONFORD, MICHELS and PRESSLER.

*Mr. Jack B. Kirsten* argued the cause for appellants (*Messrs. Kirsten, Solomon, Friedman & Cherin*, attorneys).

*Mr. Patrick T. McGahn, Jr.* argued the cause for respondent Ventnor City (*Messrs. McGahn and Friss*, attorneys; *Mr. Solomon Friss* on the brief).

*Mr. Bertram P. Goltz, Jr.*, Deputy Attorney General, argued the cause for respondent Board of Public Utility Commissioners (*Mr. William F. Hyland*, Attorney General of New Jersey, attorney; *Mrs. Erminie L. Conley*, Deputy Attorney General, of counsel; *Mr. Mark A. Geannette*, Deputy Attorney General, on the brief).

*Mr. Alfred L. Nardelli* argued the cause for Department of the Public Advocate, Division of Rate Counsel (*Mr. Stanley C. Van Ness*, Public Advocate, attorney).

The opinion of the court was delivered by
CONFORD, P. J. A. D. Appellants are a group of subsidiaries, directly or indirectly, of Teleprompter Corporation (collectively referred to as "Teleprompter" or "petitioner"). They severally conduct cable television distribution services in Ocean City, Wildwood, Ventnor and Vineland. They appeal from a determination and order of the Board of Public Utility Commissioners dismissing their application for increases in rates and charges for the services they render. That order and determination was, in turn, based upon the report by a hearing examiner in the Office of Cable Television of the Board recommending the dismissal of the petition, on motion of rate counsel in the office of the Public

Advocate, after extensive submission of proofs in support of the application for rate increases.

Teleprompter acquired these companies from other cable television (CATV) companies prior to the enactment in this State of the Cable Television Act, *L.* 1972, *c.* 186 (*N. J. S. A.* 48:5A–1 *et seq.*). They had been, and were continuing, as of the filing of the petitions herein in 1974, to operate under franchise granted and rate schedules approved by the individual municipalities, subject to the effect of the new law after its adoption. The Cable Television Act declares that the "rates, services and operations of cable television companies in this State are affected with a public interest." *N. J. S. A.* 48:5A–2(a); that such companies should be regulated in the interest of the public, *id.* at (b), and that among the objects of such regulation is "to provide just and reasonable rates and charges for cable television system services without unjust discrimination * * *," *id.* at (c). An Office of Cable Television, headed by a director, is empowered to administer the regulation of such companies under the Board. *N. J. S. A.* 48:5A–4 to 7.

The Board, through the Office, is directed to "prescribe just and reasonable rates, charges and classifications for the services rendered by a CATV company * * *" and "from time to time [to] cause the established rates and rate schedules of each CATV company * * * to be reviewed," and if it appears that they may be excessive or unreasonable, to require the company to establish to its satisfaction that such rates are just, reasonable and not excessive. After hearing, upon notice, rate schedules may be amended and superseded. *N. J. S. A.* 48:5A–11 (a), (b), (c).

Under the act an initial consent to operate in any municipality must be obtained from that municipality. *N. J. S. A.* 48:5A–22 *et seq.* Applications must, among other things, specify a schedule of proposed rates of CATV service which shall not be altered for the term of consent except by application to the Board for amendment after public

hearing or as a result of proceedings under *N. J. S. A.* 48: 5A–16 or 11. *N. J. S. A.* 48:5A–28(g).

After the holding of 12 formal hearing sessions on Teleprompter's petition between May 2, 1975 and September 8, 1975, rate counsel in the Public Advocate's office moved to dismiss the application on the ground that the exhibits and testimony submitted by petitioner in support of its application improperly included, in the statements of the value of the company assets upon which a fair rate of return was sought, the item of "good will," represented in that data as "excess of purchase price [from prior owners] over underlying value of net assets." The position of the movant was that if such good will were excluded from the proposed rate base, the net return to the companies would be adequate and fair. After consideration of briefs and argument the hearing officer rendered a written decision essentially agreeing with the motion and recommending dismissal of the application. He projected a detailed analysis, from petitioner's own books, of the result of deducting the aforesaid "excess of purchase price" (which he denominated good will) from the gross value of assets of the several companies, along with consequent appropriate deductions of interest and other expenses from operating expenses. He accepted petitioner's expert's analysis of the equity portion of Teleprompter's capital structure as being 41.6% thereof. Applying that percentage to the company's consolidated value base as previously adjusted by him, he found the adjusted net income on a consolidated corporate basis to produce a return of 18.15%, which he concluded not to constitute an unjust and unreasonably insufficient return to the company. As noted, these determinations were accepted by the director and the Board after considering exceptions filed by Teleprompter.

## I

Teleprompter's first complaint on appeal is that it has been denied "due process" in that it has been denied the

opportunity to be fully heard on its application and to be afforded "notice as to the standard required to be met."

## A

■ The first branch of the point is that petitioner was deprived of the right to adduce all its evidence by the hearing officer's entertainment of the motion to dismiss before conclusion of its case. However, it appears that the movant and the hearing officer assumed that petitioner had concluded the presentation of its evidence, and petitioner never contended, in response to the motion or on exceptions before the Board, that it had any further substantive proofs to submit in support of its application. Nor does it, even on this appeal, suggest what, if any, additional evidence it would have offered before the hearing officer if the motion to dismiss had not intervened.

We conclude that in substance, if not in form, the hearing examiner's decision was a determination on the merits in as full a sense as if the parties had announced they were resting on the record as concluded at the hearing of September 8, 1975, supplemented by the argument and briefs tendered the examiner by the parties thereafter. Petitioner has not shown it has been denied the opportunity to be fully heard.

## B

■ Teleprompter argues it was not afforded any opportunity to know what "standard" it would be required to meet to sustain its case for relief before rate counsel's motion was filed. This contention is specious. The standard upon the basis of which the hearing examiner ruled was the same one, or at least the principal one, reflected in petitioner's presentation of its case — rate base/rate of return. The fact that Teleprompter emphasized during the hearings that it needed sufficient revenue to attract new investment to meet extensive capital needs does not derogate from the essential character of its plea as one for a better return on invest-

ment. At no time during the hearings or in response to the motion to dismiss did petitioner indicate it was unaware of the standard to which its proofs were expected to conform.[1] Indeed, so far as appears, it was free to present its case on any standard it chose to submit in support of its complaint that its rates were inadequate.

The hearing examiner did not, as petitioner argues, hold that "Teleprompter must meet a traditional utility rate base/rate of return standard in order to obtain rate relief." He merely decided that on the only tangible standard projected by the petitioner itself — inadequacy of return on rate base — its case was deficient.

## II

Teleprompter argues that CATV companies are not public utilities and that therefore judging its case before the Office of Cable Television by whether "it met standards for rate relief under a traditional public utility rate base/rate of return analysis" was improper. It cites *N. J. S. A.* 48:5A–4 which declares that "nothing in this act shall be construed as declaring or defining cable television to be a public utility or subjecting it to the application of any of the provisions of Title 48 * * * except as otherwise specifically provided in this act." From this it argues that since determination of return on a particular rate base "is the essence of public utility regulation," that method is intended to be excluded in determining just and reasonable rates for CATV companies under the 1972 act. The stated proposition is both a *non-sequitur* and undercut by petitioner's own presentation of its case before the agency on a rate base/rate of return approach.

---

[1] On the matter of notice, the rules of the agency require the application to show, *inter alia*, "operating income at present and proposed rates and * * * calculations showing the indicated rate of return on the average net investment * * *." *N. J. A. C.* 14:17–6.17.

■ In view of how petitioner tried and argued its case before the Office of Cable Television and the Board, this is not the appropriate case for any definitive adjudication as to permissible bases for determination of just and reasonable rates for CATV companies. It will suffice to say that petitioner has not made any persuasive demonstration before us that in providing for the regulation of rates of CATV companies, which the Legislature has described as affected with a public interest, that body necessarily excluded the rate base/rate of return approach for just and reasonable rates by reason of its declaration that such companies should not be subject to the whole gamut of legislation applicable to public utilities set forth in *Title* 48.

We of course do not in this opinion hold or imply that other methods of regulation of rates of CATV companies may not be appropriate or valid under the statute. *Cf. In re Application of Saddle River,* 71 *N. J.* 14, 22 (1976). We are given to understand that the entire subject is under close study by the agency at this time.

We reject as irrelevant to the merits of this appeal, in view of the way the case has been litigated to this point, petitioner's observation that "the public would not be harmed if CATV companies continue to negotiate rates with the municipalities in which they operate until rules [as to standards of rate regulation] are adopted."

## III

Teleprompter's reply brief, for the first time in this extended litigation, makes the point as to the distinction between "good will" and "going value"; implies that the "excess of purchase price over underlying value of net assets," mentioned above, is in whole or part going value, properly includable in rate base, rather than good will; and it criticizes the determination of the agency in not making findings of fact in this regard.

True it is that going value, which represents that component of value "in an assembled and established plant, doing business and earning money, over one not thus advanced," is a property right properly includable in a rate base. *Los Angeles G. & E. Corp. v. Railroad Comm'n,* 289 *U. S.* 287, 313, 53 *S. Ct.* 637, 647, 77 *L. Ed.* 1180 (1933). This is distinguishable from good will, being that "element of value which inheres in the fixed and favorable consideration of customers, arising from an established and well-known and well-conducted business," *ibid.,* which is not properly includable in the rate base of a monopoly. *Wilcox v. Consolidated Gas Co. of New York,* 212 *U. S.* 19, 52, 29 *S. Ct.* 192, 53 *L. Ed.* 382 (1909). The courts have recognized that the distinction is "difficult of application." *Los Angeles G. & E. Corp. v. Railroad Comm'n, supra,* 289 *U. S.* at 314, 53 *S. Ct.* 637. The evidence herein establishes that Teleprompter is a monopoly in its areas of franchise, or sufficiently close to a monopoly, so that disallowance of good will in its rate base is sound. *Cf. Public Service Coord. Transport v. State,* 5 *N. J.* 196, 220–221 (1950).

It does not appear that in resisting rate counsel's motion or in exceptions to the hearing commissioner's recommendations petitioner made the contention it now belatedly advances. The item in question was referred to during the hearings on several occasions as good will, and its inclusion in the value base apparently never there sought to be defended by petitioner as going value. And even now petitioner does not suggest how much of the "excess" item should be allocated to going value as distinguished from good will, or how any such division may be determined. In such circumstances it is in no position to complain of insufficient findings of fact by the agency. On the case as made before the administrative agency its findings and conclusions are unexceptionable and are adequately supported by the record.

Judgment affirmed.